EDUARDO ACEVEDO VÁZQUEZ, demandante y apelante, *v.* ELEANOR MATHEOSSIAN, conocida por ELEANOR ACEVEDO, demandada y apelante.

Núm. 6924.—*Sometido:* Febrero 19, 1936. *Resuelto:* Julio 23, 1936.

*La Costa & La Costa,* abogados de la apelante; *José Veray, Jr.,* abogado del apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Eduardo Acevedo Vázquez radicó este pleito de divorcio en octubre, 1931. Alegó que su esposa había abandonado voluntariamente el hogar el 18 de diciembre de 1929. La demandada negó la alegación relativa al abandono voluntario y sostuvo, como defensa afirmativa, que en febrero, 1930, Acevedo la había abandonado sin causa ni motivo justificado, negándose a satisfacer sus necesidades; que en mayo, 1930, ella había iniciado una acción en Nueva York solicitando la separación legal, fundándose en abandono, trato cruel e injurias graves y por haber dejado de satisfacer sus necesidades; que Acevedo compareció en dicho pleito, contestó la demanda, y entre otras defensas, interpuso una acusación a esta demandada de infidelidad, controversia que, de acuerdo con el procedimiento del estado de Nueva York, fué sometida a la consideración de un jurado, y éste resolvió el *issue* a favor de esta demandada y en contra de Acevedo y en su consecuencia se dictó la correspondiente orden y la corte condenó además a Acevedo a pagar a la demandada la cantidad de $11 semanales en concepto de pensión alimenticia más $100 para *litis expensas*; que Acevedo no ha cumplido con la orden de la corte de Nueva York, y en su virtud dicha corte dictaminó que el demandante había cometido un desacato y ordenó su arresto, orden que no ha podido cumplirse porque él salió del Estado de Nueva York.

En el juicio celebrado en la corte de Aguadilla, Acevedo declaró: Que él y su esposa no vivían juntos porque ella había abandonado el hogar conyugal en diciembre 18, 1929; que al

surgir el abandono ellos residían en 236 Bergen Street, Brooklyn; que el abandono fué enteramente voluntario; que la conducta de él hacia ella era buena; que había comisionado a varios amigos para que la convencieran de que debía regresar y que personalmente había tratado de persuadirla; que los amigos a que se refería lo eran Augusto Font, Ismael Calderón, Salvador Grajales y Cruz Vaz Pérez; que el resultado de estos esfuerzos fué negativo; que estos amigos visitaron al testigo el día de Navidad y le invitaron a una fiesta en la casa de Calderón.

El testigo entonces identificó, y su abogado ofreció como prueba, una carta fechada julio 8, 1929, escrita por un letrado perteneciente a una sociedad cooperativa legal, que dice así:

"Sra. Eleanor Acevedo,
Calle Bergen 236,
Brooklyn.

Estimada señora:
"Hace poco escribí a usted en relación con los disgustos existentes entre usted y su esposo, Don Eduardo Acevedo, mas hasta el presente no he recibido respuesta suya. Usted no puede eludir sus responsabilidades permaneciendo callada, y si es necesario llevar este asunto a los tribunales, ello redundará en su perjuicio. La razón que tengo para solicitar de usted que venga a verme es que a mi juicio puede llegarse en esta forma a un arreglo satisfactorio. ¿Tendría usted la bondad de pasar por mi oficina a su más pronta conveniencia?

Atentamente,

Leonard McGee,
Abogado de la Sociedad
Cooperativa Legal."

Esta carta fué admitida en evidencia con la objeción del letrado de la demandada. Era claramente inadmisible. Ella no podía considerarse como prueba de los esfuerzos del marido para inducir a su esposa a regresar al hogar luego del supuesto abandono del hogar por parte de ella, ya que, aunque redactada en presencia del marido y a su instancia,

fué escrita varios meses antes de surgir la alegada deserción y estaba dirigida a la esposa al lugar en que marido y mujer entonces residían.

De la relación del caso y opinión emitida por el juez de distrito, tomamos el siguiente extracto (bastardillas nuestras):

"De las admisiones hechas por la demandada en su contestación y de la prueba practicada, resultan probados, a entera satisfacción del tribunal, los siguientes hechos: que el demandante residía en esta Isla un año inmediatamente antes de radicar la demanda del presente pleito; que demandante y demandada contrajeron matrimonio el día 26 de junio de 1926 en el Condado de Kings, Estado de Nueva York; que la demandada voluntariamente, sin motivo ni causa justificada, abandonó al demandante desde el día 18 de diciembre de 1929, *negándose a volver a vivir con él a pesar de las frecuentes gestiones que por conducto de amigos, mediante cartas y por medio de una institución llamada 'Legal Aid Society'* hizo el demandante cerca de la demandada para que ésta cesase en el abandono y volviese a reanudar las relaciones conyugales y que de dicho matrimonio nació una hija nombrada Ana Luisa que en la actualidad tiene siete años de edad más o menos, quien vive con el demandante en Puerto Rico.'"

En la repregunta el demandante voluntariamente informó que con anterioridad a la fecha del supuesto abandono por parte de su esposa, ella había llegado ebria a su casa después de las doce de la noche. Del examen redirecto tomamos las dos siguientes pregunta y respuestas:

"P.—Y a preguntas del compañero usted le dijo que con anterioridad al abandono ella llegaba borracha a su casa?
"R.—Sí, señor; después de las doce de la noche.
"P.—¿Y ése fué el motivo que lo obligó a usted a ir a la *Legal Aid Society?*
"R.—Sí, señor; y ahí está la carta de ellos dirigida a ella."

La única carta adicional que podría tener alguna relación con los esfuerzos personales realizados por el demandante para persuadir a su esposa de que debía regresar al hogar

marital, fué una comunicación fechada el 31 de diciembre de 1930, que lee así:

"Sra. Eleanor Acevedo,
Calle Wyckoff 183,
Brooklyn, Nueva York.

"He establecido mi residencia definitivamente en Puerto Rico y jamás regresaré a Nueva York. Ana Luisa sigue perfectamente. Usted sabe muy bien cuán inmoral fué su conducta, y el hecho de que me abandonó está fuera de toda discusión. Sin embargo, si regresa a Puerto Rico, podrían considerarse los términos de una reconciliación.

Respetuosamente,

(Firmado) Eduardo Acevedo."

Salvador Grajales e Ismael Calderón declararon en parte como sigue:

*Grajales.*

"P.—¿Quién abandonó a quién?

"R.—Pues según informes que recibí el día 25 de diciembre en que fuimos un grupo de amigos. . .

"P.—¿De qué año?

"R.—Del 1929; fuimos un grupo de amigos para invitarlo. . .

"P.—¿A dónde fueron?

"R.—Al 236 de Bergen Street.

"P.—¿Quiénes fueron a invitarlo?

"R.—Fuimos Rafael Calderón, Ismael Calderón, Augusto Font, Cruz Vaz Pérez y un servidor.

"P.—¿Cuándo fueron a invitarlo ustedes?

"R.—El día 25 de diciembre de 1929, de cuatro a cinco de la tarde.

"P.—¿Y cómo encontraron ustedes a Eduardo Acevedo?

"R.—Cuando nosotros llegamos a la casa de él nos causó sorpresa encontrarlo triste y solo en la casa y le preguntamos el por qué de su estado y entonces él nos contestó que su esposa hacía una semana o sea desde el día 18 de diciembre que había abandonado el hogar y que él no se encontraba en estado de ir a fiestas por esa causa.

"P.—¿Eran ustedes muy amigos?

"R.—Siempre hemos sido amigos desde muchachos.

"P.—¿Él en alguna ocasión lo comisionó a usted para que se viera con ella para ver si conseguía que ella volviera al hogar?

"R.—Ese día permanecimos como media hora allí y en la conversación él nos rogó que le hiciéramos el favor y procuráramos ir donde ella a la casa de la suegra de él.

"P.—¿Dónde era eso?

"R.—En el 183 de la calle Wyckoff, y él nos pidió que si la veíamos allí que la rogáramos para que se fuera a vivir otra vez con él.

"P.—¿Tuvo usted oportunidad de entrevistarse con ella?

"R.—Ese día cuando salimos del hogar de Eduardo Acevedo nos marchamos para en casa de la suegra de él, pero no la encontramos a ella allí; estaba sola la viejita; entonces en otra ocasión en Harlem, en el Roseland Palace, un *dancing* que hay allí, tuve ocasión de verla acompañada de un hombre; allí hablé con ella y le dije lo que él me había dicho; y tenía esa facilidad de hablar con ella en confianza porque la conocía, y entonces ella me contestó que ella estaba joven y que quería gozar de la vida y no estaba dispuesta a volver a vivir con él."

*Calderón.*

"P.—Por qué no viven juntos? ¿Quién abandonó a quién?

"R.—Según yo me enteré ella lo abandonó a él.

"P.—¿En qué forma se enteró usted y cuándo fué que la esposa de Eduardo Acevedo lo abandonó?

"R.—Pues Eduardo Acevedo y yo siempre hemos sido íntimos amigos y yo daba fiestas en mi casa allá en Nueva York; yo soy casado y cuando tenía mi residencia en Nueva York daba fiestas en mi casa y recuerdo. . .

"P.—¿Usted es de aquí mismo de Aguadilla?

"R.—Sí, señor.

"P.—¿Y Eduardo Acevedo también?

"R.—Sí, señor; y cada vez que daba un baile en mi casa iba a invitarlo a él y a su señora, y en diciembre 25 de 1929 yo fuí con un grupo de amigos a invitarlo a él para un baile bueno que íbamos a tener.

"P.—¿Fueron ustedes a su misma casa?

"R.—Sí, señor; y entonces fuimos el grupo de amigos a su casa y lo encontramos solo en su casa y él nos dijo que le era imposible ir a la fiesta por las condiciones en que estaba, que estaba muy triste, y entonces me dijo que la esposa lo había abandonado.

"P.—¿Le dijo qué tiempo hacía que estaba solo abandonado por su esposa?

"R.—Me dijo que ella lo había abandonado como seis o siete días antes de eso.

"P.—¿Y usted en su calidad de amigo hizo gestiones a solicitud de él por conseguir que ella volviera al hogar?

"R.—Sí, señor; él nos aconsejó a nosotros o nos suplicó que hiciéramos todo lo posible para ver si ella quería regresar al hogar.

"P.—¿Usted se vió con ella?

"R.—Sí, señor.

"P.—¿En dónde se vió usted con ella?

"R.—Bueno, ese mismo día no me ví con ella; ese día nosotros fuimos a la casa donde vivía la mamá de ella.

"P.—¿Dónde era eso?

"R.—En el 183 Wyckoff Street; pero ella no estaba allí presente; solamente estaba la mamá, y entonces resolvimos volvernos para Nueva York; más luego la ví en el Parque Central corriendo en un bote en el lago de la 110; allí la ví que estaba con un joven.

"P.—¿Habló usted con ella?

"R.—Sí, señor; esperé que ella terminara de correr y la llamé aparte pidiéndole permiso al joven, y entonces yo la aconsejé y le dije que por qué había abandonado a Eduardo y le sugerí que volviese a su hogar porque ya ellos tenían una hija y no debían vivir separados, pero ella me dió a entender que no amaba a Eduardo; que a Eduardo no le gustaba la fiesta pero que ella era una muchacha que le gustaba bailar mucho y gozar de la vida.

"P.—¿Cuando ellos vivían juntos usted los visitaba?

"R.—Sí, señor.

"P.—¿Cómo era el comportamiento de Eduardo Acevedo para con su esposa?

"R.—Un joven de su casa; él se portaba muy bien con ella."

El demandante mismo declaró que su esposa había instado el recurso solicitando la separación legal anticipando una demanda de divorcio por parte de él, con que la había amenazado por la causal de adulterio. También dijo que luego del alegado abandono del hogar por parte de ella, él se había gastado unos $500 con la Greater New York Detective Agency en un esfuerzo fútil de obtener prueba substancial del adulterio.

El hecho de haber acudido el marido a la sociedad cooperativa legal y el espíritu en que está concebida la carta de esa sociedad a la esposa, tienden a probar una situación doméstica que milita fuertemente contra la aseveración del marido de que el abandono del hogar por parte de su mujer fué enteramente voluntario. La tendencia natural de la amenaza del marido de radicar un pleito de divorcio fundado en adulterio que precipitó la acción de la mujer solicitando la separación legal, fué estimular y fortalecer cualquier idea que la esposa hubiera tenido de hacer que la separación fuese permanente. La carta del marido de 31 de diciembre de 1930, reiteró el cargo no probado y aparentemente infundado de adulterio al referirse a la "naturaleza inmoral" de la conducta de la esposa. Entonces, la aseveración de que si la esposa· regresaba a Puerto Rico, se podrían considerar los términos de una posible reconciliación, no fué una invitación cordial ni incondicional de que viniera a Puerto Rico para reanudar las relaciones conyugales. No se le ofreció el pago de los gastos de viaje, ni se le aseguró que tendría lugar una reconciliación en determinadas condiciones, ni tampoco que había un hogar esperándola en caso de que se llegara a tal reconciliación. El dejar la esposa de responder en seguida a las sugestiones de Grajales y Calderón no fué prueba suficiente de una determinación fija de hacer que la separación fuese permanente. Echando a un lado por el momento el pleito en que se solicitaba la separación legal, muy bien podría sostenerse que si se hubiera presentado una moción de *nonsuit* cuando el demandante terminó su prueba, la misma habría sido declarada con lugar. Sea ello como fuere, la sentencia debe ser revocada por otros motivos.

La demandada declaró en una deposición tomada en Nueva York: que vivió con Acevedo hasta febrero, 1930; que desde entonces ha estado separada de su marido, no porque ella lo haya abandonado, sino porque él la abandonó a ella; que su marido la abandonó en febrero, 1930, en Nueva York; que en mayo, 1930, ella inició pleito en Nueva York contra Ace-

vedo en solicitud de la separación legal, fundada en abandono, trato cruel y porque éste se negaba a satisfacerle sus necesidades; que la Corte Suprema, en febrero 29, 1932, dictó sentencia a favor de ella, incluyendo alimentos por la suma de $11 semanales, más $674 por alimentos atrasados, y concediendo a ella la custodia de la menor; que Acevedo no ha pagado parte alguna de la sentencia, y que cuando salió de Nueva York se llevó la niña consigo.

De copia certificada de la sentencia ofrecida como prueba en el presente caso, aparece; que en un pleito solicitando la separación de mesa y tálamo instruído por la esposa en el Condado de Kings, estado de Nueva York, se habían notificado personalmente a Acevedo un emplazamiento y una demanda jurada; que él compareció en dicho pleito por sus abogados y contestó la demanda negando algunas de las alegaciones en ella contenidas, sosteniendo por vía de contrademanda que la demandante había cometido ciertos actos de adulterio y solicitando se dictara un decreto a su favor declarando roto y disuelto el vínculo matrimonial; que la cuestión de adulterio fué sometida a un jurado y éste resolvió las cuestiones sometídasle en favor de la esposa, y declaró que la demandante no había cometido los actos de adulterio imputados en la contrademanda; que la corte confirmó las conclusiones del jurado y habiéndose llamado para juicio el caso de separación legal de la esposa, uno de los jueces de la Corte Suprema, después de haber oído la prueba aducida por ella, halló que Acevedo la había abandonado allá para el 26 de diciembre de 1929; que desde entonces éste no había contribuído en absoluto al sostenimiento de ella y que había cometido los actos de crueldad alegados en la demanda; que el decreto de separación de mesa y tálamo fué dictado por el abandono, falta de proveer alimentos, y por el trato cruel e injurias graves de parte de Acevedo.

Los artículos 421 y 422 del Código de Enjuiciamiento Civil (ed. 1933) leen como sigue:

"Artículo 421.—El efecto de una sentencia o decreto definitivo en una acción, o un procedimiento especial, ante un tribunal o juez de Puerto Rico o de los Estados Unidos, con jurisdicción para pronunciar sentencia o decreto es como sigue:

"    .    .    .    .    .    .    .    .    .

"2.—En los demás casos, el fallo o decreto, en cuanto a la materia directamente juzgada, será concluyente entre las partes y sus sucesores en interés por título adquirido posteriormente al comienzo de la acción, o del procedimiento especial, las cuales estuvieren litigando por la misma cosa, bajo el mismo título, y en el mismo carácter, siempre que tuvieren noticia expresa o tácita de estarse substanciando la acción o procedimiento.

"Artículo 422.—Otros decretos judiciales de un tribunal o juez de Puerto Rico, o de los Estados Unidos, crean una presunción controvertible, según la materia determinada, directamente, entre las mismas partes y sus representantes y sucesores en interés por título adquirido con posterioridad al comienzo de la acción o del procedimiento especial, las cuales estuvieren litigando por la misma cosa, bajo el mismo título y el mismo carácter."

Si la sentencia dictada en Nueva York no era un impedimento absoluto al pleito iniciado por el marido en Puerto Rico, ella creó, por lo menos, una fuerte presunción en favor de la esposa sobre la cuestión de abandono (ya resuelta en favor de ella como demandante en el recurso solicitando la separación) y esa presunción (de no ser algo más que una presunción) no fué destruída por la prueba aducida por el aquí demandante.

Véanse a este respecto las siguientes autoridades: *Thompson* v. *Thompson* 226, U. S. 551; *Harding* v. *Harding,* 198 U. S. 317; *Barber* v. *Barber,* 21 How. 582; *Miller* v. *Miller,* 150 Mass. 111; *Kelly* v. *Kelly,* 87 S. E. 567; *Zavaglia* v. *Notarbartolo,* 137 La. 722, 69 So. 152; *Scheper* v. *Scheper,* (S. C.) 118 S. E. 178; 4 A.L.R. 858.

*La sentencia apelada debe ser revocada y sobreseerse el recurso.*

Los Jueces Asociados Señores Córdova Dávila y Travieso no intervinieron.